IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

B.A.,[1]

     Plaintiff,

v.                                                                      Civil Action No. _____

UNITED STATES OF AMERICA;
OFFICER CHRISTOPHER BRIAN GOODWIN

     Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, B.A., was brutally raped and otherwise sexually assaulted and battered while incarcerated at the federal prison in Lexington, Kentucky, known as the Federal Medical Center, Lexington ("FMC Lexington" or "FMC"). By and through her attorneys, she brings claims based upon the Eighth Amendment to the United States Constitution pursuant to the legal standards set forth in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2D 619 (1971), and based upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* and/or other applicable law. For her complaint against Defendants, B.A. states as follows:

### PARTIES

1.     Plaintiff, B.A., was at all relevant times to this complaint in the custody of the Federal Bureau of Prisons ("BOP"), including at FMC Lexington, which is the prison facility

---

[1]    These initials, and all initialized references to inmate victims of sexual assault at FMC Lexington, are pseudonyms used to protect the subject's identities for personal safety reasons. These persons have legitimate fears of retaliation from correctional officials and/or present or former inmates for making public allegations regarding correctional officers.

located within the Eastern District of Kentucky where the sexual assaults described herein occurred.

2.      Defendant, the United States of America, is a sovereign entity named herein pursuant to the Federal Tort Claims Act and oversees the Federal Bureau of Prisons, which is responsible for the custody and care of federal inmates.

3.      Defendant, Officer Christopher Brian Goodwin ("Defendant Goodwin" or "Officer Goodwin" or "Goodwin"), was at all times relevant to this complaint employed by the BOP as a Correctional Officer at FMC Lexington and was responsible for, but not limited to, maintaining security and providing for the safekeeping, care, and protection of inmates incarcerated there, including plaintiff, B.A.

4.      Defendant Goodwin was at all times relevant to this complaint acting under color of law and within the scope of his employment with the United States BOP.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1346 (b)(1) as the claims in this case are brought against the United States of America under the Federal Tort Claims Act 28 U.S.C. 2671, *et seq.* and against the individual Defendant under the Eighth Amendment to the United States Constitution, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971).

6.      Plaintiff filed an Administrative Claim (Form 95) on August 31, 2020 with the Federal Bureau of Prison's Mid-Atlantic Regional Office, and the six-month time period for a response or denial has passed.  Her claim is now considered denied, she has exhausted all obligatory administrative remedies, and this matter is ripened for the filing of this civil action.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as some or all of the events upon which this action is based occurred in the Eastern District of Kentucky.

## FACTS

8. At FMC Lexington the BOP employs correctional officers, facilities staff and management to oversee and operate the prison facility. The correctional officers are trained, managed, overseen and paid by the BOP through the United States Department of Justice serving "investigative or law enforcement" functions.

9. As a federal inmate, B.A. was committed to the Government's care, custody, and control and while in such custody, federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection ... of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(2)-(3).

10. As a federal inmate, B.A.'s options for escaping sexual assault or for resisting the sexually abusive conduct of a guard were limited.  B.A. — like all inmates at FMC Lexington — relied on employees to protect her from sexual abuse by guards and staff.

11. As a condition of his employment, Defendant Goodwin was or should have been required to attend and complete the BOP's Correctional Training Program, Phases I (an introductory two-week course) and II (a three-week long course) and also received a week of specific training on how to supervise female offenders.  Moreover, annually, or otherwise periodically, Goodwin would have received refresher training and continuing education on the prohibition of sexual abuse of inmates.

12. Many of the BOP's policies are contained in documents titled "program statements" which set forth rules and procedures that all BOP employees are required to follow.

3

**Program Statement 3420.11 – Standards of Employee Conduct**

13.     Program Statement 3420.11 sets out the duties and responsibilities of all BOP employees. It requires that employees, "[A]s soon as practicable (but no later than 24 hours) report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation.  Every employee is required to immediately report to management any act or omission by any person that could result in a breach of institution security. Failure by employees to follow these regulations and policy or any other Bureau policy or relevant regulation(s) could result in disciplinary action, up to and including removal."

14.     Program Statement 3420.11 (Standards of Employee Conduct) mandates that "[n]o employee shall engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as *consensual* sex between staff and inmates."

15.     Program Statement 3420.11 states that BOP employees are subject to administrative action, up to and including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature.

16.     Program Statement 3420.11 goes on to state that "Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened.  Sexual contact is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person.  All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution."

17.    Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11.

18.    Program Statement 5324.12 (Sexually Abusive Behavior Prevention and Intervention Program) concerning the prevention of, and intervention upon, sexually abusive behavior, implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and provides guidelines to address prohibited and/or illegal sexually abusive behavior.

19.    Program Statement 5324.12 is the controlling BOP policy addressing the prevention of, and intervention upon, sexually abusive behavior.  It is disseminated agency-wide and applies to all facilities operated by the BOP and every staff member working within each correctional facility.

20.    Program Statement 5324.12 lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates particular staff and agency reporting duties with respect to sexually abusive behavior, including concerning incidents or possible incidents of sexual abuse or sexual harassment:  it mandates that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or where appropriate, in accordance with the Program Statement 3420.11."

21.    BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

22.    Inmates, employees, and the public may file a complaint at the BOP facility where an incident of sexual abuse occurred; through BOP's Office of Internal Affairs; or with the Department of Justice Office of Inspector General (OIG). In accordance with the agency's own

5

Standards of Employee Conduct, BOP employees must report any violation of those Standards, or any rule or law within one business day of the incident to their Chief Executive Officer (CEO), OIA, or the OIG. Decisions regarding disciplinary action in cases where the allegations are sustained are managed by BOP's Human Resources Management (HRM) and BOP's Office of General Counsel.

### *The Raping And Other Sexual Assaulting Of B.A.*

23.     In August of 2019, B.A. was assigned to a work crew refinishing and tiling the floors in various buildings at FMC Lexington, including the Union offices in the Administration Building ("A-Building").

24.     Defendant Goodwin supervised B.A.'s work crew.

25.     Soon after B.A. began on the crew, Defendant Goodwin began making frequent sexual comments, telling B.A., for example, that he was going to "get his dick sucked" by a waitress who worked at a bar he owned.

26.     Defendant Goodwin's behavior escalated to specific sexual comments about B.A.: On or around the week of August 26, 2019, B.A. was measuring tile in the Union offices area and Goodwin asked her if she was trying to show him her "tits" as she bent down to do her work.

27.     Defendant Goodwin's behavior escalated to physical sexual assault: After the work crew finished tiling an office, Goodwin grabbed B.A.'s buttocks as she left the work area.

28.     Sometime the following week, on or around September 9, 2019, while escorting Plaintiff on an elevator transport, Defendant Goodwin grabbed her breast.  B.A. told him to stop.

29.     On or about September 13, 2019, Defendant Goodwin raped B.A.

30.     On that day, B.A. went to her required work area in the A-Building before lunch.

6

31.     Defendant Goodwin was in the Union Office, which is across from the Vice President's Union Office and directly down the hall from the Warden's Conference Room.

32.     B.A. spoke to Defendant Goodwin to make sure he was going to be there after lunch so the work crew could begin pulling up the carpet for their floor-tile job.

34.     Defendant Goodwin and B.A. were alone.

35.     Defendant Goodwin pulled his penis out of his pants, and although B.A. tried to leave the office, Goodwin would not let her escape.

36.     Defendant Goodwin grabbed her arm, pulled her into a storage room and forced her to perform oral sex, which she did for a short time.

37.     Defendant Goodwin then pulled B.A. off the floor, turned her around, pulled her pants down, penetrated her vulva, and raped her.

38.     After ejaculating, Defendant Goodwin left the storage room, and B.A. saw him wipe his penis off with baby wipes.

39.     Defendant Goodwin then directed B.A. to clean herself off and then place the object she used to clean herself in a box of Union t-shirts which was on the storage room floor, telling her the box was going to be thrown in the trash.

40.     B.A. followed Defendant Goodwin's orders: She cleaned her genital area with an object and tucked it back in the t-shirt box.

41.     B.A. then left and did not return after lunch.

42.     B.A. did not consent to the rape or other sexual assaults perpetrated by Defendant Goodwin, nor could she if she wanted to.  BOP explicitly states in its Program Statement 3420.11 (Standards of Employee Conduct) that "[n]o employee shall engage in, or allow another person

7

to engage in, sexual behavior with an inmate.  There is never any such thing as *consensual* sex between staff and inmates."

43.    B.A. reported the rape in early January of 2020 to a Dr. Schuster.  Upon information and belief, Dr. Schuster's full name is Megan Schuster, Psy.D., who at the time of her interaction with B.A. was a staff psychologist at FMC Lexington.

44.    Upon information and belief, triggered by B.A.'s report of rape, the object B.A. used after Goodwin's attack was moved to the Vice President's Union Office and would later be photographed by the FBI.

45.    On or around January 7, 2020, B.A. was transferred to the Fayette County Detention Center ("FCDC") pending an investigation into Defendant Goodwin.  She was told this was "for her safety."

46.    On or around January 8, 2020, SIA Officer Burchett interviewed B.A. about the attack.

47.    On or around January 17, 2020, an FBI agent whose name is recalled to be "Isaac" interviewed B.A. about the attack and showed her pictures of the object Goodwin had ordered her to use as a wipe after Goodwin's attack.  Dan McMahan with the USAO was also present at this interview.

48.    On or around February 18, 2020, B.A. was transferred back to FMC Lexington.

49.    Despite the fact B.A. was told that her stay at FCDC was "for her safety," when she was returned to FMC, Defendant Goodwin was still there and still employed by the BOP, with the continuing access to Plaintiff that his employment afforded.

50.    B.A. was told Defendant Goodwin had been reassigned to the computer services division.

51.     Upon information and belief, in this job Defendant Goodwin had the ability to read B.A.'s emails and to listen to any phone calls she placed to family.

52.     On or around February 19, 2020, SIA Officer Burchette and Dan McMahan set up another meeting with B.A. during which they took a buccal swab from her.

### *Retaliation Against B.A.*

53.     B.A. has been retaliated against for reporting Defendant Goodwin's rape to BOP representatives and authorities.

54.     On February 18, 2020, as B.A. was returning from FCDC to FMC Lexington for the first time since she reported the rape, the intake guard yelled out, loudly enough so that all guards and inmates in the area could hear, that she would need a "PREA stamp."

55.     In the transport van, B.A. said that it was too hot in the van, and in response Officer Anderson turned the heat up to its highest setting.

56.     As B.A. continued through intake procedures, Officers Grimaldi and Anderson took her legal paperwork and told her they were going to throw it away.

57.     Officer Elliot arrived during the intake process, and although a different officer had already reviewed Plaintiff's paperwork and told her it was fine for her to keep, Elliott said that B.A. could not have her legal paperwork until he read it and made sure it did not have her PSI report in it.

58.     In response to Officer Elliott's behavior, another inmate in the accompaniment of B.A. requested that an SIA officer be called, to which Elliott shouted "no" before slamming the door to a microwave oven and stomping from the room.

9

59.    Thereafter, instead of removing Defendant Goodwin from FMC Lexington, the BOP transferred B.A. to FPC Alderson, in Alderson, West Virginia, where she was openly referred to by BOP employees as a "PREA girl."

60.    A captain at FPC Alderson asked her if they were going to "get the same type of problems" out of her there.

61.    B.A.'s transfer to FPC Alderson resulted in a 7.5-hour drive by her family, rendering in-person visitation by her children impossible.  She has not been allowed to have video visits.

62.    B.A.'s transfer to FPC Alderson resulted in the loss of her carpentry apprenticeship, which was her source of income.

### COUNT I – CLAIMS AGAINST OFFICER GOODWIN PURSUANT TO THE EIGHTH AMENDMENT TO THE UNITED STATES CONSITUTION

63.    B.A. re-alleges and incorporates by reference all of the preceding allegations of this Complaint.

64.    As an inmate in the custody of the United States BOP, B.A. had a clearly established right under the Eighth Amendment to the United States Constitution not to be subjected to cruel and unusual punishment while incarcerated.

65.    Defendant Goodwin's actions constitute cruel and unusual punishment in the forms of sexual abuse, assault, battery and rape.

66.    B.A. was not sentenced with a prescription for rape or to any form of sexual abuse; they are not legitimate forms of punishment.  They are not ancillary components of any prison sentence, and they serve no legitimate penal purpose.

67.     All of Defendant Goodwin's acts and omissions were taken while acting under color of law and in the scope and course of his position as a Corrections Officer at FMC Lexington.

68.     Defendant Goodwin, individually, failed in his duty to provide B.A. with constitutionally safe and secure conditions or confinement.

69.     Defendant Goodwin acted intentionally, maliciously, oppressively and/or with gross negligence against Plaintiff's constitutional rights.

70.     As a direct and proximate result of Defendant Goodwin's misconduct, B.A. was subjected to physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation.

71.     Defendant Goodwin's conduct was of such a quality and nature as to warrant Goodwin's liability for punitive damages, in accordance with applicable law.

72.     B.A. is also entitled to recover from Defendant Goodwin all compensatory damages recognized by applicable law.

## COUNT II – CLAIMS AGAINST THE UNITED STATES OF AMERICA UNDER THE FTCA: ASSAULT AND BATTERY

73.     B.A. re-alleges and incorporates by reference all of the preceding allegations of this Complaint.

74.     The actions of Defendant Goodwin constitute assault and battery in violation of state law.

75.     Defendant Goodwin assaulted and battered B.A. through, but not limited to, unwanted, non-consensual sexual abuse, sexual assault, rape, and harassment.

11

76. All of Defendant Goodwin's acts and omissions were taken while acting under color of law and in the scope and course of his position as a Corrections Officer at FMC Lexington.

77. As a result of Defendant Goodwin's sexual assault and battery, B.A. suffered physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently.

78. Under the Federal Tort Claims Act, the Defendant, United States of America, is liable to B.A. for the unlawful actions of Officer Goodwin as he was acting within the scope of his employment as a law enforcement officer of the United States BOP.

### COUNT III – CLAIMS AGAINST THE UNITED STATES OF AMERICA UNDER THE FTCA: NEGLIGENCE

79. B.A. re-alleges and incorporates by reference all of the preceding allegations of this Complaint.

80. Defendant the United States of America is responsible for the oversight of its employees, which includes officers and staff at federal correctional institutions, including FMC Lexington.

81. Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of the State of Kentucky.

82. Federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection . . . of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(2)-(3).

83.     Defendant United States and the supervisors and employees of FMC Lexington have a duty to provide inmates, being in their custody, with a safe and secure environment, free of dangers, including the dangers of sexual harassment and sexual assault.

84.     As a premises owner/operator, the United States has a duty to provide inmates with a reasonably safe place, which specifically includes a place reasonably free and safe from known or suspected sexual abusers and rapists and/or individuals who pose a foreseeable risk of sexual abuse or rape.

85.     Correctional officers and other prison officials at FMC Lexington have a non-discretionary duty, pursuant to PREA, to enforce a policy of "zero-tolerance" with respect to sexual abuse of inmates by staff.

86.     Correctional officers and other prison officials at FMC Lexington have a duty to protect inmates from harm caused by correctional officers and other prison officials.

87.     Correctional officers and other prison officials at FMC Lexington have a duty to disallow or sufficiently monitor and supervise one-on-one inmate/officer interactions.

88.     Correctional officers and other prison officials at FMC Lexington have a duty to house inmates in a safe and secure manner.

89.     Pursuant to 28 C.F.R. § 115.31, BOP and FMC Lexington had a non-discretionary duty to train employees on how to prevent sexual abuse and sexual harassment, the right of inmates to be free from sexual abuse and harassment, the dynamics of sexual abuse and harassment, the common reactions of sexual abuse and harassment victims, and how to detect and respond to signs of threatened and actual sexual abuse and to ensure that such training was properly followed. BOP and FMC Lexington breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

90.     Pursuant to 28 C.F.R. §§ 115.31 and 115.33, BOP and FMC Lexington had a non-discretionary duty to train employees and advise inmates of their right to be free from retaliation for reporting incidents of sexual harassment and sexual abuse by corrections officers and to ensure that such training was properly followed.  Plaintiff was retaliated against, and therefore BOP and FMC Lexington breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

91.     Pursuant to 28 C.F.R. § 115.17, BOP and FMC Lexington officials have non-discretionary duties with respect to the hiring, promotion, and periodic review of their employees. Those non-discretionary duties include duties to consider any incidents of sexual harassment, whether the employee has engaged in sexual abuse, and whether the employee has been convicted or civilly adjudicated of sexual abuse.  Upon information and belief, BOP and FMC Lexington failed to perform their non-discretionary duties with respect to Defendant Goodwin or failed to appropriately responsively act if they did perform such duties.

92.     BOP supervisory officials have a duty to monitor, supervise, train, and discipline correctional staff at FMC Lexington in order to ensure that correctional staff properly perform their PREA-mandated duties so that inmates' Eighth Amendment rights are not violated.

93.     Prison officials at FMC Lexington knew or should have known that Defendant Goodwin should not have been permitted to have unsupervised access to inmates, including B.A., to whom he posed an excessive and unreasonable risk.

94.     Through the conduct of Defendant Goodwin and other BOP employees, all of the duties encompassed by this count were breached, and as a proximate result Plaintiff sustained injuries and damages.

95.     As a direct and proximate result of these breaches of duties, B.A. suffered personal injuries associated with and arising from multiple sexual assaults and rape including, but not limited to, severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court grant her the following relief:

1.     Compensatory damages as to all Counts;

2.     Punitive damages as to Count I against Defendant Goodwin, and not as to any Count against the United States of America;

3.     Reasonable attorneys' fees and costs in accordance with applicable law; and,

4.     Such other further relief as this Court in its discretion deems just.

## JURY DEMAND

Plaintiff hereby demands a jury trial on any and all Counts so triable under applicable law.


**B.A.,**
Plaintiff

*/s/David G. Bryant*
David G. Bryant
David Bryant Law, PLLC
600 W. Main St., Ste. 100
Louisville, KY 40202
Telephone:  (502) 540-1221
david@davidbryantlaw.com

15

/s/L. Dante diTrapano
L. Danté diTrapano, Esq. (WVSB# 6778)
Benjamin Adams, Esq. (WSB# 11454)
Alex McLaughlin, Esq. (WVSB# 9696)
CALWELL LUCE DITRAPANO, PLLC
500 Randolph Street
Charleston, WV 25302
Telephone: 304-343-4323
Fax: 304-344-3684
dditrapano@cldlaw.com
badams@cldlaw.com
amclaughlin@cldlaw.com


/s/Jay T. McCamic
Jay T. McCamic, Esq. (WVSB# 2386)
MCCAMIC LAW FIRM, PLLC
80 12th Street, Ste. 305
P.O. Box 151
Wheeling, WV 26003
Telephone: 304-238-9460
Fax: 304-830-5324
jay@mccamic.com


/s/Anthony I. Werner
Anthony I. Werner, Esq. (WVSB# 5203)
JOHN & WERNER LAW OFFICES, PLLC
Board of Trade Building, STE 200
80 - 12th Street
Wheeling, WV 26003
Telephone: 304-233-4380
Fax: 304-233-4387
awerner@johnwernerlaw.com